IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BLAKE SWANGO,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; VERIZON COMMUNICATIONS, INC. d/b/a VERIZON WIRELESS; and MCCARTHY, BURGESS & WOLFF, INC.,<br><br>Defendants. | Civil Action No. 1:23-cv-1335 |

## COMPLAINT

Plaintiff Blake Swango, by counsel, files this Complaint against Defendants Experian Information Solutions, Inc.; Equifax Information Services, LLC; Trans Union, LLC; and Verizon Communications, Inc. d/b/a Verizon Wireless; and McCarthy, Burgess & Wolff, Inc. (collectively, "Defendants"). In support of his claims, Mr. Swango alleges as follows:

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish

credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4. Here, Mr. Swango's credit reports show that he is past due on a Verizon Wireless account that does not belong to him.

5. Although Verizon Wireless is reporting the account, another entity—McCarthy, Burgess & Wolff, Inc.—is attempting to collect it from Mr. Swango by sending him collection letters.

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers
-and-What-to-Do-About-It.pdf.

6. McCarthy, Burgess & Wolff, Inc. persists in sending Mr. Swango collection letters, even though Mr. Swango has informed it that the account does not belong to him.

7. When Mr. Swango disputed that account with Equifax, Experian, and Trans Union, the credit bureaus and Verizon failed to adequately investigate his disputes or remove the inaccurate information from his reports.

8. As a result, Mr. Swango alleges claims against Experian, Equifax, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of his credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate Mr. Swango's disputes.

9. Mr. Swango also alleges claims against Verizon Wireless for violating the FCRA, § 1681s-2(b)(1), by failing to properly investigate his disputes and to review all relevant information provided by the consumer reporting agencies.

10. Finally, Mr. Swango alleges claims against McCarthy, Burgess & Wolff, Inc. for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e, by attempting to collect a debt from him that he did not owe.

## JURISDICTION AND VENUE

11. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Swango's claims occurred in this District.

## PARTIES

13. Mr. Swango is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

14. Experian is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15. Equifax is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

16. Trans Union is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

17. Verizon Communications, Inc. is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. It is a "furnisher" as governed by the FCRA.

18. McCarthy, Burgess & Wolff, Inc. (MBW) is an Ohio corporation. It is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because, upon information and belief, it uses interstate commerce, including mail, to regularly collect or attempt to collect debts from consumers that are owed to another entity.

**FACTS**

19. In October 2022, Mr. Swango received a letter from Convergent Outsourcing, Inc., demanding that he pay $836.30 for a past due debt purportedly owed to Verizon Wireless.

20. That letter sought to collect a debt that Mr. Swango did not owe.

21. Although Mr. Swango had an account with Verizon Wireless at that time, that account was not past due.

22. Instead, Mr. Swango had opened an account with Verizon Wireless in June 2022, and he made timely payments each month afterward.

23. Hoping to clear his name, Mr. Swango contacted Convergent to dispute the debt.

4

24. Convergent confirmed that the demand for payment to Mr. Swango was caused by a billing error and that neither it nor Verizon Wireless would seek to collect the debt.

25. Despite that representation, the purported Verizon Wireless debt began appearing on Mr. Swango's credit reports as a collection account beginning in or around December 2022.

26. Then, in March 2023, McCarthy, Burgess & Wolff mailed Mr. Swango a collection letter seeking $986.83. That letter sought the $863.30 balance represented by Convergent, as well as $150.53 in other interest, fees, and costs.

27. Soon after receiving that letter, Mr. Swango confirmed that Experian, Equifax, and Trans Union each were reporting the collection account.

28. On April 6, 2023, Mr. Swango disputed the debt to McCarthy, Burgess & Wolff via written letter. Mr. Swango made clear that his Verizon Wireless account was active and in good standing.

29. The same day, Mr. Swango mailed dispute letters to Experian, Equifax, and Trans Union.

30. Mr. Swango's dispute letters explained that he had a Verizon Wireless account but that he was current on his payments. Mr. Swango explained that the collection stemmed from a billing error and asked that the Verizon account be deleted from his credit report.

31. Upon information and belief, Equifax, Experian, and Trans Union forwarded notification of Mr. Swango's dispute to Verizon Wireless.

32. In response to Mr. Swango's disputes, Verizon Wireless failed to adequate investigate Mr. Swango's disputes. Instead, it merely conducted a cursory search of its records and confirmed the same information that it previously reported to the credit bureaus.

33. And when they received Verizon's response to Mr. Swango's disputes, Equifax, Experian, and Trans Union relied entirely on Verizon's investigation. None of them conducted any other investigation into Mr. Swango's dispute.

34. As a result, the inaccurate information about the Verizon Wireless account remained on Mr. Swango's credit reports.

35. Then, on or about April 27, 2023, McCarthy, Burgess & Wolff responded to Mr. Swango's debt dispute letter, stating that Verizon Wireless confirmed that debt as belonging to Mr. Swango. The debt collector then made an offer to Mr. Swango to settle the debt, which Mr. Swango refused because Mr. Swango did not incur the debt nor did he have responsibility for repaying it.

36. On May 26, 2023, Mr. Swango mailed follow-up dispute letters to Experian, Equifax, and Trans Union. Mr. Swango also mailed another letter to McCarthy, Burgess & Wolff.

37. Mr. Swango's second dispute letters to Experian, Equifax, and Trans Union explained that he had a Verizon Wireless account but that he was current on his payments. Mr. Swango even attached his first Verizon Wireless bill, which showed valid charges on *his account* (*i.e.*, those charges subject to his cellular service), and he attached proof of his payments to Verizon Wireless on that account by including a printout of his Bank of America account activity.

38. Upon information and belief, Experian, Equifax, and Trans Union each forwarded notification of Mr. Swango's second dispute to Verizon Wireless.

39. Verizon Wireless again failed to adequately investigate Mr. Swango's dispute, and Equifax, Experian, and Trans Union again relied entirely on Verizon Wireless's inadequate investigation.

40. As a result, the inaccurate information remained on Mr. Swango's credit reports.

41. Mr. Swango sent more dispute letters Experian, Equifax, and Trans Union in July 2023 and August 2023, again explaining that the collection account stemmed from a billing error, explaining that he did not owe the amount claim, and asking that the account be removed from his credit reports.

42. In response to these disputes, Equifax, Experian, and Trans Union again forwarded Mr. Swango's disputes to Verizon.

43. Verizon again conducted inadequate investigations, and Equifax, Experian, and Trans Union again relied entirely on Verizon without conducting any independent investigation of Mr. Swango's disputes.

44. As of this filing, the inaccurate collection account is still on Mr. Swango's credit reports.

45. And McCarthy, Burgess & Wolff's collection efforts are ongoing.

46. As a result of Defendants' conduct, Mr. Swango has suffered significant actual damages, including a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

***Defendants' FCRA Violations Were Willful***

47. As a standard practice, Experian, Equifax, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover*

7

*Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

48. Upon information and belief and consistent with their standard policies and procedures, Experian, Equifax, and Trans Union automatically generated their "investigation" results once Verizon Wireless verified the status of the account, and they did not take any extra actions to verify the accuracy of the information that the furnishers provided.

49. Instead, Experian, Equifax, and Trans Union blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Mr. Swango's credit reports.

50. Experian, Equifax, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

51. Experian, Equifax, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

52. As a result, at all times relevant to this Complaint, Experian's, Equifax's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

53. Verizon Wireless's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Verizon Wireless's

conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

54. In addition, the willfulness of Verizon Wireless's FCRA violations can be established by, for example:

 a. Congress enacted the FCRA in 1970, and Verizon Wireless has had over 50 years to become compliant;

 b. Verizon Wireless is a corporation with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that Verizon Wireless determined that its conduct was lawful;

 c. Verizon Wireless knew, or had reason to know, that its conduct contradicted the FCRA's plain language, regulatory guidance, and the relevant case law;

 d. Verizon Wireless voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

 e. Verizon Wireless's FCRA violations were repeated and systematic;

 f. Verizon Wireless had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

 g. Verizon Wireless had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
## (EXPERIAN, EQUIFAX, and TRANS UNION)

55. Mr. Swango incorporates the preceding allegations.

56. Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Mr. Swango's credit reports and credit files they published and maintained.

57. Because of Experian's, Equifax's, and Trans Union's conduct, Mr. Swango suffered actual damages, including, without limitation, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

58. Experian's, Equifax's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Mr. Swango for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Mr. Swango to recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(EXPERIAN, EQUIFAX, and TRANS UNION)**

59. Mr. Swango incorporates the preceding allegations.

60. Experian, Equifax, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the furnishers, including Verizon Wireless, with all the relevant information about Mr. Swango's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Mr. Swango in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Mr. Swango's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

61. Because of Experian's, Equifax's, and Trans Union's violations of §1681i, Mr. Swango suffered actual damages, including, but not limited to, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

62. Experian's, Equifax's, and Trans Union's violations of § 1681i were willful, rendering them liable to Mr. Swango for actual damages, statutory damages, punitive damages,

costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, Experian, Equifax, and Trans Union were negligent, entitling Mr. Swango to recovery under 15 U.S.C. § 1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (VERIZON WIRELESS)

63. Mr. Swango incorporates the preceding allegations.

64. On one or more occasion within the past two years, Verizon Wireless violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Mr. Swango's disputes.

65. When Mr. Swango disputed the account with the credit bureaus, Verizon Wireless used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

66. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

67. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

68. Upon information and belief, the ACDV form is way that Verizon Wireless has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

69. Upon information and belief, the credit reporting agencies forwarded Mr. Swango's disputes by ACDVs.

70. Verizon Wireless understood the nature of Mr. Swango's disputes when it received the ACDV forms.

71. Upon information and belief, when Verizon Wireless received the ACDV form containing Mr. Swango's disputes, it followed a standard and systematically unlawful process

where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

72. Upon information and belief, when Verizon Wireless receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

73. Because of Verizon Wireless's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Mr. Swango suffered actual damages, including a reduced credit score, embarrassment, humiliation, stress, and other emotional distress.

74. Verizon Wireless's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Mr. Swango for punitive damages under 15 U.S.C. § 1681n. In the alternative, Verizon Wireless was negligent, entitling Mr. Swango to recovery under 15 U.S.C. § 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(VERIZON WIRELESS)**

75. Mr. Swango incorporates the preceding allegations.

76. On one or more occasion within the past two years, Verizon Wireless violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

77. As Mr. Swango detailed in the previous Count, Verizon Wireless has elected to use the e-Oscar system for its FCRA disputes from the consumer reporting agencies.

78. When it received the ACDV forms from the credit-reporting agencies, Verizon Wireless did not review any of the information that Mr. Swango included in his dispute, which demonstrated that Verizon Wireless's reporting of the account was inaccurate.

79. If Verizon Wireless had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

80. Verizon Wireless also ignored the other information that the consumer-reporting agencies provided on Mr. Swango's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

81. Verizon Wireless knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

82. Verizon Wireless does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

83. Verizon Wireless understood Mr. Swango's disputes and that he was disputing that he owed the claimed amount to Verizon Wireless.

84. Despite this, Verizon Wireless did not update its incorrect reporting regarding the accounts and continued to report the inaccurate information about Mr. Swango.

85. Because of Verizon Wireless's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Mr. Swango suffered actual damages, including a decreased credit score, embarrassment, humiliation, and other emotional distress.

86. Verizon Wireless's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

87. In the alternative, Verizon Wireless was negligent, entitling Mr. Swango to recover damages under 15 U.S.C. § 1681o.

**COUNT FIVE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(McCarthy, Burgess & Wolff)**

88. Mr. Swango incorporates the preceding allegations.

89. McCarthy, Burgess & Wolff violated the FDCPA, § 1692e, by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, attempting to collect a debt from Mr. Swango that he did not owe.

90. Mr. Swango suffered actual damages because of McCarthy, Burgess & Wolff's § 1692e violation, including a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

91. Mr. Swango is entitled to recover actual damages, statutory damages, his reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Mr. Swango demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**BLAKE SWANGO**

By: /s/ Kristi C. Kelly
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*